UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL WINGO,

        Petitioner,

                                                                  Case No. 04-71558

v.                                              (Criminal Case No. 91-80936-12)
                                             Honorable Patrick J. Duggan

UNITED STATES OF AMERICA,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on August 29, 2007.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

On April 26, 2004, Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. In his motion, Petitioner raised various grounds to challenge his 1992 convictions on eighteen different counts: one count of conspiracy to possess with intent to distribute cocaine and heroin; one count of engaging in a continuing criminal enterprise ("CCE"); two counts of aiding and abetting in the distribution of a controlled substance; one count of possession with intent to distribute a controlled substance; two counts of using a firearm in drug trafficking; one count of possession of a firearm with an obliterated serial number; eight counts of money laundering; and two counts of unlawful use of a telephone. This Court issued an opinion

and order on January 31, 2005, denying Petitioner relief on all but one ground raised in his motion: Petitioner's assertion that he was denied the effective assistance of counsel due to his attorney's failure to attend his debriefing sessions with government agents in 1992. The Court concluded that an evidentiary hearing was necessary to address that issue.[1] The Court now resolves Petitioner's remaining ground for relief.

**Factual and Procedural Background**

In late 1991, a federal grand jury returned an indictment charging Petitioner and several other individuals with various drug-related offenses. On February 13, 1992, Petitioner was named in a forty-eight count superseding indictment charging thirteen individuals with a variety of drug-related crimes. The superseding indictment alleged that Petitioner and a co-defendant, Brett Lang, led a heroin and cocaine distribution ring in the Detroit area from approximately 1989 until 1991, and that they dealt in a total quantity of drugs exceeding the equivalency of 47,000 pounds of marijuana. Petitioner was arraigned on the superseding indictment on February 25, 1992.

Sometime before February 13, 1992, Petitioner retained the services of Stephen A. Glass. According to Mr. Glass, Petitioner decided that he wanted to work out a deal with the government and thus Mr. Glass contacted Ron Waterstreet, the Assistant United States Attorney handling the prosecution. Pursuant to the plea agreement procedures

---

[1] While the Court subsequently expanded the issues to be addressed at the evidentiary hearing to include Petitioner's claim that he was denied the effective assistance of counsel due to his attorney's absence at plea negotiations between himself and the prosecutor in September 1993, the Court thereafter found no merit to Petitioner's claim. (11/27/06 Op. and Order at 3 n. 1.)

used by the United States Attorney's Office in the Eastern District of Michigan, Mr. Glass and Mr. Waterstreet arranged for Petitioner to be debriefed by government agents.

At his first debriefing session with Mr. Waterstreet and federal agents on February 13, 1992, Petitioner signed a "Kastigar" letter. Mr. Waterstreet and various federal agents thereafter "debriefed" Petitioner on four separate occasions in February 1992. Mr. Glass did not attend any of the debriefing sessions. In the end, Petitioner did not plead guilty and he was tried before a jury from May 11 through July 2, 1992. The jury returned a verdict on July 2, finding Petitioner guilty on the previous identified counts.

In an opinion and order entered on November 27, 2006, this Court concluded that, before Petitioner's debriefing sessions began, Mr. Glass failed to adequately and effectively explain the Kastigar letter to him. As a result, Petitioner believed that the information he provided to the government during the debriefing sessions could not be used against him in any way. In fact, pursuant to the Kastigar letter, the government could make derivative use of Petitioner's statements. The Court also found that Mr. Glass provided ineffective assistance of counsel to Petitioner before the debriefing sessions in that he failed to adequately explain the debriefing process to him. Due to this error, Petitioner believed, when he signed the Kastigar letter, that he had a firm plea offer from the government of ten to fifteen years imprisonment if he told the truth during the debriefing sessions.

The Court then addressed the question of whether Petitioner suffered any prejudice

as a result of his counsel's ineffectiveness.² In his motion, Petitioner argued that he suffered prejudice because he admitted during the debriefing sessions to participating in illegal activities with the following individuals, whose involvement with him, he claimed, was previously unknown to the government: Michael Zajac, Joann Person, Carnel Perry, and Tirrell Harris. Petitioner alleged that he suffered further prejudice because these individuals only agreed to cooperate with the government and testify against Petitioner at trial when the government informed them of his debriefing statements.

For whatever reason, before the Court issued its November 27, 2006 opinion and order, the government did not respond to Petitioner's assertions of prejudice. Nevertheless, as the Court previously acknowledged, government agents in fact were aware of Petitioner's illicit activities with at least Mr. Harris prior to Petitioner's debriefing sessions. (11/27/06 Op. and Order at 22.) While the Court also found evidence in the trial record indicating that government agents were aware of Mr. Zajac's drug activities before Petitioner was debriefed, the government failed to present any evidence to counter Petitioner's assertion that government agents were unaware of *his* involvement with Mr. Zajac prior to the debriefing sessions.³ (11/27/06 Op. and Order at

---

²Petitioner argued that the debriefing sessions were a critical stage of the proceedings and that, therefore, prejudice is presumed. (Pet.'s Br. in Supp. of § 2255 Mot. at 8 (citing *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047 (1984).) This Court, however, rejected that argument in its November 27, 2006 opinion and order and held that Petitioner must demonstrate prejudice to succeed on his ineffective assistance of counsel claim. (11/27/06 Op. and Order at 21); *Strickland v. Washington*, 466 U.S. 666, 687, 104 S. Ct. 2052, 2064 (1984).

³Specifically, at trial the government introduced telephone conversations between Mr. Zajac and Petitioner which had been recorded before Petitioner's debriefing sessions. Petitioner

4

22.)

Without specific references from the government, the Court did not search the entire record to determine whether government agents had information regarding Petitioner's drug dealings with Ms. Person or Mr. Perry independent of the information Petitioner provided during his debriefing sessions. This was due to the Court's conclusion that, of the four individuals Petitioner identified (Zajac, Person, Perry, and Harris), there only was a reasonable probability that Mr. Zajac's testimony affected the outcome of Petitioner's trial, and then only with respect to his CCE conviction.[4] The Court found it unlikely that Ms. Person's or Mr. Perry's testimony affected the outcome of the CCE charge and the Court found that the government possessed and introduced substantial evidence at trial, independent of these four individuals, for the jury to have found Petitioner guilty of the remaining charges. The Court therefore granted Petitioner partial relief pursuant to 28 U.S.C. § 2255 and vacated his CCE conviction.

The government filed a motion for reconsideration on December 11, 2006, raising three challenges to the Court's decision. (2/12/07 Op. and Order at 2.) The Court decided to reconsider its decision to set aside Petitioner's CCE conviction, based only on

---

claimed in his Section 2255 motion, however, and the government presented no evidence to demonstrate otherwise, that it only was through the information Petitioner provided during his debriefing sessions that government agents were able to identify Mr. Zajac as one of the participants in those conversations. (Pet.'s Br. in Supp. of § 2255 Mot. at 22 n. 9.)

[4]With respect to the CCE conviction, the Court found a reasonable probability that Mr. Zajac's testimony played a significant role in the prosecution's ability to establish two of the elements of the charge: (1) that Petitioner derived a substantial income from his drug activities and (2) Petitioner's leading role in the criminal enterprise. (11/27/06 Op. and Order at 24-25.)

5

the government's claim that it could refute Petitioner's assertions of prejudice. (*Id*. at 3-4.) Although noting that the government previously had the opportunity to respond to Petitioner's assertions of prejudice and that courts generally do not consider previously available arguments and evidence presented for the first time in a motion for reconsideration, the Court concluded that the circumstances of the case called for an exception to the general rule. (*Id*. at 5.) The Court therefore granted the government's motion for reconsideration and scheduled an evidentiary hearing for March 14, 2007, "to address whether Petitioner suffered prejudice as a result of the deficiency of his counsel's performance, as identified in the Court's November 27, 2006 opinion and order." (*Id*. at 7.)

The parties presented evidence regarding the issue of prejudice at an evidentiary hearing held on March 14, 15, and 16, 2007. On May 14, 2007, Petitioner filed a post-hearing brief. The government filed its post-hearing brief on June 5, 2007. Petitioner filed a "reply" brief on June 14, 2007.

**Issues Presented and Analysis**

This Court, in its November 27, 2006 opinion and order, focused on two claims by Petitioner in concluding that he suffered prejudice as a result of his counsel's deficient performance. Those are the *only* claims that the Court intended to revisit at the evidentiary hearing in March 2007. The first claim is Petitioner's assertion that government agents discovered his criminal activities with Mr. Zajac only as a result of his

6

debriefing statements.[5] (11/27/06 Op. and Order at 22.) The second claim is Petitioner's assertion that the government used his debriefing statements to secure Mr. Zajac's cooperation and trial testimony. (*Id*. at 22-23.) At the evidentiary hearing in November 2005, Petitioner testified that his family members and co-defendants told him that government agents informed them that Petitioner was cooperating and providing information regarding their criminal activities and so they needed to cooperate too. (11/15/05 Tr. at 118.) Petitioner specifically testified about a phone conversation he had with Mr. Zajac after Petitioner was detained, where Mr. Zajac said that since Petitioner had "done spilled the beans on him," he (Mr. Zajac) "might as well get aboard too."[6] (*Id*.)

With respect to government agents' knowledge of Mr. Zajac's involvement in drug activities with Petitioner, the government has now demonstrated that the agents were aware of their activities independent of Petitioner's debriefing statements. In support of its motion for reconsideration, the government offered former Hamtramck Police Officer Gary Boike's testimony at Petitioner's and Mr. Zajac's November 13, 1991 detention hearing. (Doc. 1076, Ex. 6.) On that date– several months before Petitioner's debriefing

---

[5]During the evidentiary hearing in 2005, Petitioner testified that the government only learned about Zajac, Person, Perry, and Harris based on his debriefing statements and that those individuals agreed to testify against Petitioner because they were told by government agents that Petitioner "had already told on you all, so you all got to come." (11/15/05 Tr. at 117-18.) As indicated previously, however, the Court focused and continues to focus its prejudice analysis on Mr. Zajac, because it concludes that only his testimony likely affected the outcome of the proceedings (and specifically, only Petitioner's CCE conviction).

[6]The Court notes that Mr. Zajac died of a heart attack five or six years ago. (3/15/07 Tr. at 19.)

7

sessions began– Officer Boike described telephone conversations between Petitioner and Mr. Zajac, where Mr. Zajac requested drugs from Petitioner. (*Id*. at 25-28.) Officer Boike specifically testified that he was able to identify Mr. Zajac's voice and he explained how he was able to make that identification. (*Id*.) Notably, as demonstrated in his testimony, Officer Boike also was able to interpret the terms Petitioner and his co-defendants used during the intercepted telephone conversations to indicate the type, quantity, and price of the drugs involved in their transactions.[7] (*Id*. at 17-23.)

At the evidentiary hearing in March 2007, Officer Boike testified that, prior to November 1991, the government had received information from numerous informants that Mr. Zajac was selling cocaine and that Petitioner and Brett Lang were his source of supply. (3/15/07 Tr. at 6-7.) As Mr. Waterstreet pointed out during his testimony (3/16/07 Tr. at 8-9), Mr. Zajac in fact already was identified as a target of the government's investigation when it submitted its wiretap application in November 1990.[8] (Govt.'s Hrg. Ex. 9.) Officer Boike testified that government agents knew in late 1990 that Mr. Zajac was a distributor of cocaine for Petitioner based on information from

---

[7]This testimony counters Petitioner's assertion that the government relied on his statements during the debriefing sessions to interpret the intercepted telephone calls. (Doc. 1001 at 16 & Doc. 1012 at 5.)

[8]On May 14, 2007, Petitioner filed a post-evidentiary motion to strike Mr. Waterstreet's testimony at the evidentiary hearing due to Mr. Waterstreet's presence in the courtroom as other witnesses testified. (Doc. 1091.) The Court holds that it was proper for Mr. Waterstreet to remain in the courtroom during the evidentiary hearing, even though he was going to testify as a witness, for the same reasons that an investigative agent's presence is proper during a criminal trial. FED. R. EVID. 615 & advisory committee notes.

informants and telephone calls intercepted during the November 1990 wiretap. (3/15/07 Tr. at 9-10.) Officer Boike and Mr. Waterstreet further testified that several witnesses (seven, according to Mr. Waterstreet) appeared before the federal grand jury prior to Petitioner's November 1991 arrest and testified regarding Mr. Zajac's drug trafficking with Petitioner. (*Id.* at 10; 3/16/07 Tr. at 16-18.)

Based on this evidence, the Court now does not conclude that government agents knew about Petitioner's and Mr. Zajac's drug activities *only* because of Petitioner's debriefing statements. The government has shown that it had independent sources for this information. Not only were government agents aware before February 1992– when Petitioner's debriefing sessions began– that Mr. Zajac was distributing cocaine that he obtained from Petitioner, but they were aware of specific instances when Mr. Zajac obtained drugs from Petitioner and the specific quantities of drugs obtained.

The government also presented evidence at the evidentiary hearing to counter Petitioner's second assertion of prejudice on which this Court based its November 27, 2006 holding– that the government used Petitioner's debriefing statements to encourage Mr. Zajac to cooperate and testify against Petitioner.[9] Stuart Rudick, the attorney

---

[9]In earlier opinions, this Court did not specify whether it found that Petitioner suffered prejudice because (1) the government secured Mr. Zajac's cooperation by telling him *what* Petitioner said during his debriefing, (2) the government used *the fact* that Petitioner was debriefed to encourage Mr. Zajac to cooperate, or (3) Mr. Zajac decided to cooperate because he learned (from the government or otherwise) that Petitioner cooperated. In his pleadings in support of his Section 2255 motion, however, Petitioner only has asserted that he suffered prejudice because the government used his debriefing statements to induce individuals to testify against him. For example, in his initial Section 2255 motion filed on April 26, 2004, Petitioner asserted that government agents located Perry, Person, Harris, and Zajac "*informing them of the*

9

representing Mr. Zajac when he decided to cooperate and plead guilty, testified at the evidentiary hearing that government agents never told him that anyone, including Petitioner, had cooperated. (3/14/07 Tr. at 35-36.) Mr. Rudick further testified that Mr. Zajac never indicated to him that he decided to plead guilty because Petitioner was cooperating with the government. (*Id*. at 45.)

At the evidentiary hearing, the government agents involved in the case testified that they did not reveal Petitioner's cooperation or debriefing statements to Mr. Zajac. Drug Enforcement Administration Special Agent Steven Mitchell testified that he never told Petitioner's co-defendants (including Mr. Zajac), the defense attorneys involved in the case, or people on the street that Petitioner had been debriefed. (3/14/07 Tr. at 60-62.) Officer Boike, Internal Revenue Service Criminal Investigator Martin Sviland, and the prosecutors involved in the investigation, Wayne Pratt and Mr. Waterstreet, provided similar testimony. (3/15/07 Tr. at 15-16, 45-46, 61-62, 65; 3/16/07 Tr. at 30-31.)

The only evidence Petitioner has offered to demonstrate that the government used his debriefing statements to encourage Mr. Zajac to cooperate is Mr. Zajac's alleged statement to Petitioner that "the [g]overnment said you spilled the beans on me and I

---

*illicit activities revealed by defendant*, to induce or coerce them to testify against defendant." (Doc. #1001 at 7 (emphasis added).) In his reply brief, filed in support of his motion on August 19, 2004, Petitioner claimed that the government used his debriefing statements against him "*by using said statements* to induce witnesses to testify against [him]." (Doc. #1012 at 5 (emphasis added).) Moreover, to support this assertion of prejudice, Petitioner relies on two cases: *United States v. Hylton*, 294 F.3d 130 (D.C. Cir. 2002) and *United States v. Kurzer*, 534 F.2d 511 (2d Cir. 1976). In both cases, the issue was whether a witness' testimony against the defendant was derived from the government's giving of information provided in the defendant's debriefing statements to the witness. *Hylton*, 294 F.3d at 134; *Kurzer*, 534 F.2d at 515, 517.

might as well get aboard too."[10] (3/16/07 Tr. at 77-78.) This evidence, however, does not demonstrate that the government used Petitioner's *debriefing statements* to secure Mr. Zajac's cooperation or testimony. Moreover, even if Mr. Zajac decided to cooperate because he learned that Petitioner had been debriefed, the Court finds it more likely that he obtained this information from people on the street rather than from government agents.[11]

### Conclusion

For the above reasons, the Court concludes that Petitioner has not demonstrated prejudice resulting from his decision to be debriefed by government agents. Therefore, although Petitioner's counsel was deficient in explaining the terms of the *Kastigar* letter and the debriefing process to him, the Court holds that Petitioner is not entitled to relief based on his

---

[10] At the evidentiary hearing on March 16, 2007, the government raised a hearsay objection when Petitioner began testifying about this conversation with Mr. Zajac. (3/16/07 Tr. at 77.) The Court overruled the objection. (*Id.*) After the government completed its cross-examination of Petitioner, however, the government moved to strike Petitioner's testimony regarding Mr. Zajac's alleged statements. (*Id.* at 100.) After a discussion on the record, at defense counsel's suggestion, the Court advised the parties to file post-hearing briefs on the issue. The Court now concludes that the government waived any objection to the admission of Mr. Zajac's purported statements when it failed to object to the statements a year and a half earlier at the initial evidentiary hearing. (11/15/05 Tr. at 118.) The government's oral motion to strike Petitioner's testimony is therefore denied.

[11] This conclusion is based on the fact that many of the defendants in this matter (including Petitioner) are close family members who discussed the case with each other and Petitioner even after Petitioner was detained. (3/15/07 Tr. at 22; 3/16/07 Tr. at 76-77.) It also is based on Officer Boike's description of the defendants' community as a small town where everybody knows everybody and their business. (3/15/07 Tr. at 17, 21.) Finally, it is based on Mr. Waterstreet's testimony that, during the government's investigation, government agents heard events being discussed in the community where Petitioner and his co-defendants lived that the agents thought were known only to themselves. (3/16/07 Tr. at 57.)

ineffective assistance of counsel claim.

Accordingly,

**IT IS ORDERED**, that Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**;

**IT IS FURTHER ORDERED**, that Petitioner's motion to strike the testimony of Ronald Waterstreet is **DENIED**;

**IT IS FURTHER ORDERED**, that the government's oral motion to strike Petitioner's testimony regarding Michael Zajac's out-of-court statements is **DENIED**.

                                                   s/PATRICK J. DUGGAN
                                                   UNITED STATES DISTRICT JUDGE

Copies to:
Joan Ellerbusch Morgan, Esq.
AUSA David Gardey, Esq.
AUSA Wayne Prat, Esq.
AUSA Ronald Waterstreet, Esq.